LAW OFFICES OF

# MILLS MEYERS SWARTLING P.S.

1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WA  98104

NIKKI C. CARSLEY
ncarsley@millsmeyers.com
(206) 812-7486

RECEPTION
(206) 382-1000

FACSIMILE
(206) 386-7343

February 5, 2018

**VIA E-MAIL**

Breean Beggs
Paukert & Troppmann, PLLC
522 W Riverside Ave, Ste 560
Spokane, WA  99201

Greg Boos
Cascadia Cross-Border Law
1305 11th St, Ste 301
Bellingham, WA  98225

Re: *Boule v. Egbert, et al.*
U.S. District Court for the Western District of Washington
Case No. 2:17-cv-00106-RSM
Supplementation of Plaintiff's discovery responses

Dear Breean and Greg,

Thank you for meeting-and-conferring with me last Wednesday to discuss each party's discovery responses. I write to memorialize our conversation. Please let me know if I have misunderstood anything.

Within the next week, you agreed to supplement the following responses as requested in my January 26, 2018, letter:

- Interrogatory Nos. 2–3, 6, 8, and 21;
- Request for Production Nos. 2 and 24;
- Part of Interrogatory No. 4 related to Boy Scouts of America, Sun News, Jade East Co., and Chief Wenatchee;
- With regard to Interrogatory No. 5, you stated that Mr. Boule's businesses aren't standalone entities, but you'll supplement with complete information about Mr. Boule's "D/B/A's;" and
- With regard to Request for Production No. 31, you stated that Mr. Boule doesn't have any transportation licenses beyond his Transient Accommodation License and his Business License, because he's not required to. You agreed to confirm this in writing.

By February 13, you agreed to supplement Mr. Boule's following responses as requested in my January 26, 2018, letter:

# EXHIBIT E

Breean Beggs & Greg Boos
February 5, 2018
Page - 2

- Section of Initial Disclosure computing each category of damages Mr. Boule claims;
- Interrogatory Nos. 11–12, 14, and 17–20;
- Request for Production Nos. 3, 13, 18–19, 29, and 32; and
- With regard to Request for Production No. 22, you'll ask Mr. Boule if he has any records of cash earnings (as opposed to earnings documented by check or credit card) since January 1, 2007.

Based on privacy rights, the *State v. Jorden* case, 160 Wash.2d 121 (2007), and the AG's recent lawsuit against Motel 6, you said that Mr. Boule can't supplement Interrogatory No. 10 or Request for Production No. 6 as requested.

The holding of *Jorden*, however, doesn't support this position. *Jorden* held that a law-enforcement program that "check[ed] the names in a motel registry for outstanding warrants without individualized or particularized suspicion violated the defendant's article I, section 7 rights," *id.* at 130, not that hotel-guest information sought in a lawsuit is protected from discovery. The Washington Supreme Court has confirmed that *Jorden* is not to be interpreted broadly: "A fair reading of our opinion in *Jorden* is that motel guest registries are 'private affairs' only to a limited extent." *In re Nichols*, 171 Wash.2d 370, 377 (2011). And a complaint filed by the AG or any other litigant doesn't establish what the law is or otherwise bind the Court.

Please supplement Mr. Boule's responses to Interrogatory No. 10 and Request for Production No. 6 no later than February 13.

With regard to Request for Production Nos. 9–10, you agreed to confirm that Mr. Boule isn't withholding any documents based on alleged "restrictions placed on [him] by the United States government."

With regard to the information Mr. Boule is withholding due to alleged "restrictions placed on [him] by the United States government" (including discoverable information Special Agent Barnett has, other names Mr. Boule has used, his employment history, and redactions to text messages and e-mail communications), you stated that Mr. Boule doesn't have any objection to providing the information requested.[1] He simply hasn't received guidance from the government about how to proceed. You said you understand why we want this information and that it's not being withheld for strategy. Instead, it's withheld based on a confidentiality obligation Mr. Boule believes he has to the government. You could not, however, identify any specific laws or

---

[1] You stated that, for safety reasons, he might designate the other names he's used as "for attorney's eyes only."

Breean Beggs & Greg Boos
February 5, 2018
Page - 3

regulations from which this alleged obligation arises. You said that, if you identified the source of the obligation, that would reveal information Mr. Boule thinks he's obligated to protect.

In an effort to facilitate the release of this information, you said that Mr. Boule would probably sign a release authorizing the government to share information about him pursuant to the Protective Order. You provided Raphael Sanchez's name and contact information as a potential point-of-contact at ICE. Enclosed for Mr. Boule's signature is such release.

You also requested an unredacted copy of Mr. Goldfarb's January 22, 2018, letter, because you thought it might disclose what information we know about Mr. Boule or provide additional detail about what Agent Egbert has been authorized to disclose. An unredacted copy of the letter is also enclosed.

We also discussed part of the supplementation Greg requested in his January 30, 2018, letter. You requested Agent Egbert supplement his Initial Disclosure based on Mr. Goldfarb's January 22, 2018, letter. You specifically requested copies of witness statements and recordings from an investigation of our clients' March 20, 2014, interaction that you believe occurred.

In response, I again confirmed that Agent Egbert's Initial Disclosure is currently complete. I also explained that we have vastly different understandings of what the United States has authorized Agent Egbert to disclose. Nowhere does Mr. Goldfarb's letter state that Agent Egbert is authorized to produce any documents, and it specifically prohibits Agent Egbert from disclosing "the existence or details of any federal investigation." (Footnote 1.) In fact, our client doesn't even have authorization to confirm what documents he's in possession of, if any.

You disagree that the meaning of "federal investigation" captures witness statements and recordings and asked if we had specific instructions from the government prohibiting the release of documents. I explained to you that the applicable *Touhy* regulations prohibit any official information or documents from being disclosed absent authorization from the government. In other words, Agent Egbert is prohibited from producing official records unless expressly authorized.

You asked if we would be willing to submit a joint letter to Jennifer Stilwell requesting copies of witness statements and recordings, if any. We are discussing this request with our client and will be in touch.

We didn't discuss Greg's request for "all insurance agreements in effect for Mr. Egbert including the agreement through which defense is being funded." However, as I've explained to Breean, FRCP 26(a)(1)(A)(iv) only requires a party to provide "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Agent Egbert isn't aware of any such insurance agreement. Agent Egbert hasn't tendered this claim to his homeowner's

Breean Beggs & Greg Boos
February 5, 2018
Page - 4

insurance, because it doesn't appear to provide any applicable coverage, and the insurance obtained through his union doesn't include indemnification coverage. Insurance agreements that don't provide applicable indemnification coverage aren't subject to initial disclosure and aren't relevant.

With regard to Plaintiff's First Set of Requests for Admission and Interrogatory No. 7, you asked if Agent Egbert would clarify how it is that he doesn't remember contacting agencies other than the IRS and the Washington State Department of Licensing about Mr. Boule. I advised that I didn't understand what information you were looking for. Agent Egbert remembers contacting only the IRS and Department of Licensing, but it's possible that he contacted other agencies, too. Few, if any, people can recall every phone call they made several years ago, so Agent Egbert's lack of recall about these details is completely understandable.

You asked if Agent Egbert would deny calling other agencies. As explained in his RFA responses, Agent Egbert can't admit or deny calling other agencies, because he doesn't recall. You asked if Agent Egbert would allow a "techie" Greg knows to search his phone for call records. I asked what that would entail, and you couldn't provide specific information. For various reasons, including privacy, we won't allow Greg's friend to search our client's phone.

With regard to Interrogatory No. 1, we won't provide the addresses where Agent Egbert has lived since 2007 or identify the persons, if any, who have lived with him. I asked how this information is relevant, and you said it might help identify witnesses or lead to further investigation. You provided the following example: if Agent Egbert lived with anyone on March 20, 2014, you could ask that person if Agent Egbert was agitated that day. But you and your client already know the identity of at least five persons present during the incident, plus the identity of a supervisor who arrived immediately afterward. Any of these witnesses could address whether Agent Egbert appeared agitated, if that's even relevant. Therefore, this request is nothing more than a fishing expedition. Law-enforcement officers have valid safety concerns about disclosing information about family members or where they live. Designating this information confidential or "for attorney's eyes only" doesn't alleviate this concern, and you haven't articulated a legitimate need for it.

You requested Agent Egbert supplement his responses to Interrogatory Nos. 2–4 and 6 and Request for Production No. 3 based on Mr. Goldfarb's January 22, 2018, letter. Subject to a scope objection, Agent Egbert's response to Interrogatory No. 4 is already complete. He's not withholding any responsive information pursuant to the *Touhy* regulations. However, Agent Egbert doesn't have authorization to further respond to Interrogatory Nos. 2–3 or 6 or Request for Production No. 3. Mr. Goldfarb's letter doesn't authorize Agent Egbert to disclose whether he's been involved in any fight, argument, or altercation at work in which blows were struck or threats were made or if he's been cited, fined, penalized, demoted, or otherwise reprimanded for such activity (Interrog. 2); all facts Agent Egbert relied on when deciding to investigate Mr. Fikret (Interrog. 3); all persons

Breean Beggs & Greg Boos
February 5, 2018
Page - 5

who have knowledge of the subject incident (Interrog. 6); or records related to any employer investigation, including discipline records (RFP 3). Moreover, Agent Egbert has other objections to Interrogatory Nos. 2–3 and Request for Production No. 3 that you ran out of time to discuss.

Greg's letter also requested supplementation of Requests for Admission Nos. 10–18 and 20. You ran out of time to discuss Agent Egbert's objections to these requests, too, but you wanted me to confirm whether Agent Egbert would supplement his responses based on Mr. Goldfarb's January 22, 2018, letter.

Again, Mr. Goldfarb didn't authorize Agent Egbert to disclose information about discipline, if any, (RFAs 10–18) or union activities (RFA 20), so Agent Egbert can't supplement these responses. Had Mr. Goldfarb authorized such disclosures, however, Agent Egbert has relevance and scope objections that haven't been resolved.

Would you please forward authority for your statement that "[d]isciplinary history is always a factor in punitive damages cases such as this one"? We would be happy to review these cases and then advise you whether they change our position on any of the relevance objections.

Thank you. We look forward to receiving Mr. Boule's supplementation.

Very truly yours,

MILLS MEYERS SWARTLING P.S.

Nikki C. Carsley

Encls.
cc:     Scott Railton