

1305 11th Street, Suite 301
Bellingham, WA  98225
T: 360.671.5945
F: 360.676.5459
www.cascadia.com

Reply To:
**Greg Boos**, Attorney at Law
gdboos@cascadia.com

February 7, 2018

Nikki Carsley, Esq.
Mills Meyers Swartling
1000 Second Avenue-30TH Floor
Seattle WA 98104

Dear Ms. Carsley,

**Re: Boule v. Egbert No. 2:17-cv-00106-RSM**

Dear Ms. Carsely,

I write as part of our response to the Carsley, Beggs and Boos Discovery teleconference of a week ago.

We discussed Defendants request for additional information to FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ROBERT BOULE. We also discussed Plaintiff's request for additional information from Mr. Egbert.

As an initial matter, at this time, I supplement Mr. Boule's responses to:

• Interrogatory Nos. 2-6, 8, 10, 18 and 21; and
• Request for Production Nos. 2 and 24;

These responses follow.

**Interrog. No. 2 – Residences**–Please fully identify each person who has lived with Mr. Boule since January 1, 2007, including first and last name and last-known address, e-mail, and phone number.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*No one has lived with Mr. Boule since January 1, 2007. He has not had a spouse, domestic partner or roommate during this period. However, Mr. Boule provides this*

creating
TRANSPARENT
borders™

EXHIBIT F

*additional information: Andrew Poll has resided at a room in ▓▓▓▓ for the last two years, trading 3 hours' work per day at ▓▓▓ in exchange for room and board. Mr. Poll can be contacted care of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓. To the best of his knowledge Mr. Boule does not believe Mr. Poll to have an e-mail address. Because of his residence maintained within ▓▓▓▓ and because he exchanges work for room and board at ▓▓▓ Plaintiff believes that a broad reading of FRCP 1 supports a reasonable argument that Mr. Poll lives with Mr. Boule.*

*Similarly, within the timeframe designated, Jason Surowiecki ▓▓▓▓ and Hope Wolf ▓▓▓▓ resided in a room at ▓▓▓ for a period of time, trading work at ▓ ▓ in exchange for room and board. Because of their residence maintained within ▓▓▓▓, and because they exchanged work for room and board at ▓▓▓ Plaintiff believes that under a broad reading of FRCP 1, Defendant may have a reasonable argument that these individuals lived with Mr. Boule for a period of time since January 1, 2007. The current address for the couple is:*

▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓

**Interrog. No. 3 – Family**- Please fully identify all persons listed in response to this interrogatory, including last-known address, e-mail, and phone number.

***Answer:*** *In addition to the information already supplied by Mr. Boule, he provides this information:*

*Mr. Boule's Mother, Father and Step Father are deceased. Mr. Boule thinks his step-sister may be alive but is uncertain as they have not had contact for approximately 19 years. The step-sister's last-known address is ▓▓▓▓▓▓▓▓▓▓▓▓ (Mr. Boule cannot recall an exact street number or the phone number).*

**Interrog. No. 4 – Work History**-Please supplement this incomplete response. Please fully identify the Boy Scouts of America Foundation, including its address and telephone number. In addition, are the amounts listed for Sun News, Jade East Co., and Chief

Wenatchee annual salaries? If so, did Mr. Boule's salary at these companies change over the course of his employment?

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*The official home of the Boy Scouts of America Foundation is c/o Boy Scouts of America, Mount Baker Council, 1715–100th Pl SE #B, Everett, WA 98208–425.338.0380. Throughout his employment with the Foundation, Mr. Boule worked from his home –* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Without waiving objection to the overbroad nature of the question, as to the amounts listed for Sun News, Jade East Co., and Chief Wenatchee, the amounts listed are Mr. Boule's best recollection of his closing annual salary at each organization. Mr. Boule recalls the he received raises during employment at each organization.*

**Interrog. No. 5 – Businesses**–Please provide the full legal name of the Smuggler's Inn and Classic Limousines.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*Mr. Boule is not an expert in business law and he does not intend to retain counsel to answer this question. The full legal name of "Smuggler's Inn and Classic Limousines" is most likely "Robert Boule", as Mr. Boule does not do business through stand-alone entities.*
*For example, Smugglers Inn is often called Smugglers Inn Bed and Breakfast. In its transient accommodations paperwork The State of Washington has issued Mr. Boule a license under the name of Smugglers Inn Bed and Breakfast. Meanwhile, as your examination of the tax audit paperwork supplied to you, the IRS auditor referred to the business name for Mr. Boule's business activities as being Smuggler's Inn. In many of his tax returns the business is Smuggler's Inn. Meanwhile in a newsletter published by the Port of Bellingham, the transportation component of Mr. Boule's business was referred to as Smuggler's Inn Classic Limousines.*

3

**Interrog. No. 6 – Education**–Please state any degrees, honors, or awards Mr. Boule earned at Central Washington University.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*Mr. Boule received no degree, or any honors or awards from Central Washington University.*

**Interrog. No. 8 – Claims for Damages**-Please clarify your response. Has Mr. Boule asserted any claims for damages that didn't result in a lawsuit? If so, please identify the parties (*i.e.*, provide their names, addresses, and phone numbers) and describe the disposition of the claim.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*In August or September of 2018, Mr. Boule received approximately $20,000 for damage to a limousine because of damage inflicted by border inspection techniques when crossing to and from Canada. Mr. Boule recollects that his insurer was Titan Insurance, and the policy was sold to him through Rice Insurance, 1400 Broadway, Bellingham, WA 98225 (360) 734-1161.*

*Mr. Boule recalls receiving an amount of not more than $25,000 approximately 10 years ago for damage to a limousine caused by border inspection techniques when crossing to and from Canada. Mr. Boule recollects that his insurer was National Insurance, and the policy was sold to him through Rice Insurance, 1400 Broadway, Bellingham, WA 98225 (360) 734-1161.*

**Interrog. No. 10 – Kaya Fikret**- Please supplement this incomplete response. When was Mr. Fikret's reservation made? When did he pay for his room and transportation? Where was he transported by Mr. Boule or Smuggler's Inn employees? What was the reason for his stay?

*Answer:* In addition to the information already supplied by Mr. Boule, he provides this information:

Mr. Boule is precluded from answering this question by Article 1, Section 7 of the Constitution of the State of Washington. See: **State v. Jorden**, 160 Wn.2d 121, 156 p.3d 893 (2007).

**Interrog. No. 18 – Employees-** Please supplement this incomplete response. Unless it's set forth by Mr. Boule's Initial Disclosure, please provide the missing contact information for each person listed. In addition, please provide each person's dates of employment.

*Answer:* In addition to the information already supplied by Mr. Boule, he provides this information:

Mr. Boule does not have addresses for most persons listed nor does he have dates of employment. He presumes that most or these persons still reside in the Blaine WA area. However, Mr. Boule adds to information already supplied:

*Full contact information for Andrew Poll follows:*



For the "approximately 35 others [who] worked a few days on contract," please provide their names and the rest of the requested information.

Mr. Boule recalls a few more names and phone numbers of the "approximately 35 others [who] worked a few days on contract,":

Heidi Brown 
Pat Michanlc
Wayne Snow

**Interrog. No. 21 – Advertisements-** Please clarify your response. Other than in Point Roberts Press and other local newspapers and publications, has Mr. Boule or the Smuggler's Inn placed any other print advertisements since January 1, 2009? If so, please describe the other print advertisements, including the content and when, where, and with whom the advertisements ran.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*Mr. Boule has responded as completely as is possible. He has reconstructed his recollection of where he has advertised from copies of the print advertisements already supplied and a complete record of advertising dates, fees and copy as supplied by Point Roberts Press.*

*Meanwhile, Mr. Boule desires to supplement his answer to another aspect of your question:*

*Mr. Boule recently secured another domain name, http://smugglersinnblaine.com/, where he will maintain information regarding Smuggler's Inn and how to book a room there. Mr. Boule's webmaster is gradually rebuilding his web presence, and if this is important to you the progress can be monitored via your browser.*

*Mr. Boule does not recall placing online advertisements except through his former website (he is still working to reclaim the domain name from the unknown party that has pirated it) and the third-party travel booking websites already provided.*

**RFP No. 2 – Social-Media Accounts-** Please clarify your response. Has Mr. Boule maintained any social-media accounts for himself since January 1, 2012? If so, please produce a copy of his profile page and all posting since January 1, 2012. In addition, are there any other social-media accounts for the Smuggler's Inn? If so, please produce the same documents.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*No social-media except:*

*Smugglers Inn (info already provided) Mr. Boule has made no postings to the Smugglers Inn Facebook page.*

*Mr. Boule has a rediscovered Facebook page at https://www.facebook.com/bob.boule.7 A copy of the page is attached. He has made no postings.*

**RFP No. 24 – Assistance-** Please clarify your response. Has Mr. Boule applied for any benefits other than Social Security Disability *(e.g.,* public assistance, unemployment, other disability, or workers compensation benefits)? If so, please produce documents relating to those applications.

*Answer: In addition to the information already supplied by Mr. Boule, he provides this information:*

*Mr. Boule has not applied for any benefits other than Social Security Disability and Medicare.*

You advise that Mr. Egbert affirms his decision not to release information about his residence since 2007 or to provide the names of persons he has lived with since then for fear for his life. Mr. Egbert's decision makes little sense given his place of residence (the location at which he was served with process in this matter) is common knowledge to the citizenry of Blaine.

Moreover you frame our client's legitimate interest in those who have lived with Mr. Egbert and what they may tell us as a "fishing expedition". Such objection is in disrepute. *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451, ("No longer can the time-honored cry of `fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case). See also *Mason v. Stock,* 689 F. Supp. 828 (D. Kan 1994) ("fishing expedition" demurrer has not been effective since Hickman v Taylor, 329 U.S. 495 (1947) was decided.)

I will attempt to respond to other points you have raised in your letter as time permits. Meanwhile the hour grows late and I must close so I may keep my undertaking regarding delivery of this letter to your hands.

Sincerely,

Greg Boos
Attorney at Law

7