1

Honorable Ricardo S. Martinez

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
      FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

ROBERT BOULE,

9                                      No. 2:17-cv-00106-RSM
                    Plaintiff,

10                                     AGENT EGBERT'S MOTION FOR
        v.                             SUMMARY JUDGMENT

11
ERIK EGBERT, *et al.*                  NOTE ON MOTION CALENDAR:

12                                     July 27, 2018
                    Defendants.

13

14          Agent Egbert moves for summary judgment on all issues. Mr. Boule's lawsuit is an

15   unwarranted extension of *Bivens* into a new context. Even if the lawsuit were permitted under

16   *Bivens*, the constitutional claims should be dismissed, because Agent Egbert acted lawfully.

17   At a minimum, he's entitled to qualified immunity.

18          As a federal officer, Agent Egbert has immunity from Mr. Boule's negligence claim,

19   which is also improper under Washington law.

20          Even if the Court concludes there are any issues remaining for trial, it should dismiss

21   Mr. Boule's claim for attorney's fees.

22          Finally, Agent Egbert is entitled to summary judgment on his counterclaim.

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 1

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

## FACTUAL BACKGROUND

2        Erik Egbert has been a Border Patrol Agent for more than eight years. (Decl. of Agent

3    Egbert, ¶ 1.) He's assigned to the Blaine Station, which is responsible for patrolling a section

4    of the Canadian border. (Egbert Decl., ¶ 5.)

5        Plaintiff Bob Boule owns a bed-and-breakfast called "Smuggler's Inn," on property

6    that abuts the Canadian border. (Egbert Decl., ¶ 6; Decl. of Geoffrey M. Grindeland, Ex. A

7    (Boule Dep.) 16:3–8.) ████████████████████████████████████████

8    ████████████████████ (Egbert Decl., ¶ 7; Grindeland Decl., Ex. C (Olson Dep.) 147:16–22.)

9    ██████████████████████, Border Patrol agents monitored the border and took

10   enforcement action at Smuggler's Inn as they would anywhere else. (Egbert Decl., ¶ 9;

11   Grindeland Decl., Ex. B (Andersen Dep.) 36:7–37:6, 37:23–38:6, 51:22–24, 65:5–20.)

12       Smuggler's Inn is a notorious site of illegal border crossing, both north into Canada

13   and south into the United States. (Egbert Decl., ¶ 10; Andersen Dep. 17:17–20:11.) Persons

14   cross the border there on a near-daily basis. (Egbert Decl., ¶ 10; Andersen Dep. 15:7–17, 62:

15   12–22; *see also* Boule Dep. 17:9–18, 230:16–231:16.) Drug traffickers also use Smuggler's

16   Inn. (Egbert Decl., ¶ 13; *see also* Boule Dep. 33:1–17.) Cocaine and methamphetamine move

17   north into Canada, while ecstasy and an opiate called "doda" move south into the United States.

18   (Egbert Decl., ¶ 13.) Large shipments of all four drugs have been seized at Smuggler's Inn or

19   from Mr. Boule's vehicles. *Id.*

20       A couple months ago, Canadian authorities arrested Mr. Boule and charged him with

21   multiple counts of human trafficking. (Egbert Decl., ¶ 14; Dkt. 80 at 9.) Although Mr. Boule

22   refuses to answer questions about his involvement in human trafficking, he has long been

23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

facilitating and profiting from the steady flow of persons crossing the border via his property. (*See* Boule Dep. 168:9–169:4, 171:22–172:7, 196:1–197:23, 248:6–18; Egbert Decl., ¶ 14; Andersen Dep. 24:13–21, 28:20–29:9, 46:5–20, 47:5–10.)

Mr. Boule posts signs to help border crossers identify his property. (Egbert Decl., ¶ 15.) He keeps his back door unlocked so persons coming south across the border can quickly enter Smuggler's Inn. (Egbert Decl., ¶ 17; Andersen Dep. 34:10–17.)

For years, most of Mr. Boule's "guests" have illegally crossed the border the same night they arrived. (Egbert Decl., ¶ 18; Andersen Dep. 41:15–17; *see also* Boule Dep. 194:7–13, 195:5–10.) Other "guests" are persons who cross illegally into the United States and pay Mr. Boule to drive them further south. (Egbert Decl., ¶ 18.)

Smuggler's Inn isn't a place legitimate guests would choose to stay. (Egbert Decl., ¶ 19; Andersen Dep. 41:18–42:2.) It's dirty and rundown. *Id.* Nevertheless, Mr. Boule charges higher rates than Semiahmoo, a luxury resort just eight miles away. (Egbert Decl., ¶ 20; Boule Dep. 66:10–13, 74:2–7.) The only reason he can charge such high rates is because his "guests" want to sneak across the border via his property. (Egbert Decl., ¶ 20.)

Mr. Boule routinely defrauds aliens by charging them for services he never provides. (Egbert Decl., ¶ 21; Andersen Dep. 20:12–22:21.) When someone crosses the border onto his property and asks for a ride further south, he charges above-market rates for both lodging and transportation. (Egbert Decl., ¶ 21; Boule Dep. 172:18–25, 244:12–253:21.) He charges for lodging, even if the person just wants transportation. (Egbert Decl., ¶ 21; Boule Dep. 173:15–174:17.) ███████████████████████████████████████████████████████

███████████████. (Egbert Decl., ¶ 21; Boule Dep. 174:18–175:24, 177:6–14.) ████████████

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 3

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   ██████████████████████████████████████████████████████████████

2   ██████████████ . *Id.* After these arrests—████████████████—Mr. Boule refuses to

3   refund the amounts he charged for "lodging" and "transportation." (Egbert Decl., ¶ 21; Boule

4   Dep. 175:25–176:23, 177:15–180:2; Andersen Dep. 20:12–22:21.) ████████████

5   ████████████████████████████████ is a well-known method of exploiting these

6   vulnerable persons. (Egbert Decl., ¶ 21, Andersen Dep. 23:10–23.)

7      **The Incident**

8      On March 20, 2014, Agent Egbert was assigned to patrol an area along the border that

9   included Smuggler's Inn. (Egbert Decl., ¶ 22.) He was wearing his uniform and driving a

10  marked patrol vehicle. *Id.* ████████████████████████████████

11  ██████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

2

3

4

5

6

7

8

9 ██████████████████████████ Agent Andersen concurred with Agent Egbert's plan

10 to return to Smuggler's Inn that afternoon to investigate Mr. Kaya's immigration status.

11 (Egbert Decl., ¶ 27; Andersen Dep. 45:18–46:17, 48:20–49:15, 120:1–25; *see also* Olson Dep.

12 67:24–68:12, 77:14–24.)

13       That afternoon, Agent Egbert saw a black SUV with a vanity plate that read

14 "SMUGLER" return to the inn. (Egbert Decl., ¶ 29.) He recognized this vehicle as one

15 belonging to Mr. Boule, so he followed it into the driveway. *Id.* Agent Egbert's intent was to

16 contact Mr. Kaya, check his immigration status, and investigate whether he was coming to

17 Smuggler's Inn for an unlawful purpose. *Id.*

18       The SUV parked in the horseshoe driveway between the main house and carriage

19 house, and Agent Egbert pulled in behind it. (Egbert Decl., ¶ 30 & Ex. A.) This area is held

20 open to the public, guests, and tenants.[1] (Egbert Decl., ¶ 31; Andersen Dep. 127:9–24.) There's

21

22 _____

23 [1] At the time of the incident, there were long-term renters living in the carriage house. (Boule Dep. 90:23–91:11.)

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 5

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    no gate, and it's in plain view of the public road. (Egbert Decl., ¶ 31; Andersen Dep. 127:25–

2    128:2.) Border Patrol Agents had entered that area on a near-daily basis for many years, and

3    Mr. Boule hadn't ever suggested they weren't welcome there. (Egbert Decl., ¶ 31.)

4        As Agent Egbert walked toward the SUV, Mr. Boule came over and began yelling at

5    him. (Egbert Decl., ¶ 33.) Mr. Boule stepped in front of the passenger door to prevent Agent

6    Egbert from opening it. (Egbert Decl., ¶ 34; Boule Dep. 218:20–219:3.) Agent Egbert backed

7    up, so they could talk, but Mr. Boule just kept shouting that Agent Egbert was harassing his

8    customers. *Id.* Agent Egbert explained he wanted to confirm Mr. Kaya's immigration status

9    and asked Mr. Boule to step aside so he could do his job, but Mr. Boule refused. *Id.*

10       Agent Egbert was puzzled by Mr. Boule's behavior. (Egbert Decl., ¶ 35.) ████████

11   ████████████████████████████████████████████████████████████████████████

12   ████████████████   *Id.* Later, he realized Mr. Boule was probably worried Mr. Kaya was going

13   to be arrested before paying for his transportation and lodging. (Egbert Decl., ¶ 35; *see also*

14   Andersen Dep. 25:15–26:10, 31:14–32:13; Boule Dep. 219:20–220:11.) At the time, however,

15   Mr. Boule's attempts to impede his investigation made Agent Egbert even more suspicious

16   that Mr. Kaya was unlawfully in the country or engaged in illegal activity. (Egbert Decl., ¶ 35.)

17       Mr. Boule admits he understood Agent Egbert wanted to contact Mr. Kaya. (Boule

18   Dep. 223:17–20.) He admits he intentionally stepped in front of the passenger door to prevent

19   Agent Egbert from doing that. (*Id.* at 223:21–23.) Agent Egbert calmly asked Mr. Boule to

20   move, but he refused. (Boule Dep. 134:14–135:8, 223:21–224:8.) Mr. Boule concedes he

21   wasn't being detained and that, in fact, Agent Egbert would have preferred he walk away so

22   Agent Egbert could conduct his investigation. (*Id.* at 223:24–224:4.)

23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    Agent Egbert knew he was authorized to be on Mr. Boule's property to conduct an

2    immigration check, and Agent Andersen agrees. (Egbert Decl., ¶ 36; Andersen Dep. 59:8–16.)

3    Both have been trained that federal law empowers Border Patrol agents near the international

4    border to search—without a warrant—for aliens in cars and on private land, and to ask a person

5    about his or her right to be in the United States. (Egbert Decl., ¶ 36; *see also* Andersen Dep.

6    87:1–21.)

7    Eventually, Mr. Boule gave Agent Egbert enough room to open one of the vehicle

8    doors. (Egbert Decl., ¶ 37.) Mr. Boule was still very close, so it's possible that Agent Egbert's

9    arm brushed against him or that the door touched Mr. Boule as it swung open, but that wasn't

10   Agent Egbert's intention. *Id.* Agent Egbert did not use any force whatsoever, even though he

11   lawfully could have, since Mr. Boule was obstructing his investigation. (Egbert Decl., ¶ 38.)

12   Mr. Boule contends that Agent Egbert picked him up off the ground, threw him into

13   the side of the SUV, and then threw him to the ground. But Mr. Boule weighs 80 pounds more

14   than Agent Egbert, who doubts he could pick Mr. Boule up if tried. (Egbert Decl., ¶ 38.)

15   There's no way Agent Egbert could throw Mr. Boule through the air. *Id.* Nor was Mr. Boule

16   knocked to the ground as he alleges—he remained on his feet throughout this encounter. *Id.*

17   Mr. Kaya handed Agent Egbert his passport and visa, and then Agent Egbert contacted

18   Dispatch over the radio to check his status. (Egbert Decl., ¶ 39.) As Agent Egbert was running

19   these immigration checks, Mr. Boule was on his cell phone calling 911 to request a Border

20   Patrol supervisor. *Id.* Agent Egbert also called Agent Andersen over the radio and told him

21   Mr. Boule wanted a supervisor. *Id.* There was no distress in Agent Egbert's voice. (Andersen

22   Dep. 76:16–22, 78:23–79:10; Olson Dep. 73:2–15.)

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 7

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   Within a few minutes, Supervisory Agent Andersen and Border Patrol Agent Phillip

2   Olson arrived. (Egbert Decl., ¶ 40.) Mr. Boule walked over to talk to Agent Andersen. *Id.*

3   Agents Andersen and Olson observed that Mr. Boule was agitated, while Agent Egbert was

4   calm. (Andersen Dep. 55:8–20, 56:5–7; Olson Dep. 74:3–7, 75:8–18.) Mr. Boule said Agent

5   Egbert pushed him, but Agents Andersen and Olson saw no evidence of that and didn't believe

6   the accusation. (*See* Andersen Dep. 56:10–57:11, 59:22–60:14, 60:20–22; Olson Dep. 73:2–9,

7   75:19–76:21.)

8   Agent Egbert finished the immigration check, and Mr. Kaya's visa was valid, so no

9   further action was taken. (Egbert Decl., ¶ 40.) Mr. Boule then walked back to the SUV, picked

10  up Mr. Kaya's luggage, and carried it into Smuggler's Inn. (Egbert Decl., ¶ 41.) Mr. Boule was

11  moving fine, without any sign of injury. *Id.*

12  The Border Patrol agents got back into their vehicles and left Smuggler's Inn. (Egbert

13  Decl., ¶ 42.) The entire episode lasted about twenty minutes. *Id.* That night, Mr. Kaya illegally

14  crossed the border into Canada. (Egbert Decl., ¶ 43; Olson 76:22–77:13.)

15  Video ███████████████████████ captured the end of the incident. (Egbert

16  Decl., ¶ 44.) Although the carriage house blocked the camera's view of Agent Egbert's

17  interaction with Mr. Boule, the video shows Mr. Boule walk over to Agent Andersen when he

18  arrives (Egbert Decl., Ex. A, time-stamp 13:11:29.) Mr. Boule is clearly uninjured. *See id.* His

19  hat and sunglasses are still in place, and his clothing is neither scuffed nor dirty like it would

20  be if he had been thrown down onto the concrete driveway as he alleges. *See id.* And although

21  he alleges Agent Egbert lifted him off the ground by grabbing his sweatshirt in the chest area,

22  the video shows the fabric isn't the least bit stretched or wrinkled. *See id.*

23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   Mr. Boule didn't sustain any injuries during the encounter with Agent Egbert. (Decl.

2 of Dennis Chong, M.D., ¶¶ 5–10.) No has he experienced any financial loss. (Decl. of Anthony

3 J. Neupert, CPA, ¶¶ 5–7.)

4   **Agent Egbert's good-faith reporting to government agencies**

5   A couple months after the incident, Agent Egbert read a news article online in which

6 Mr. Boule openly discussed illegal border crossings via his property. (Egbert Decl., ¶ 48.) The

7 article also referenced his "SMUGLER" license plate. *Id.* The article frustrated Agent Egbert,

8 because it appeared Mr. Boule was flaunting his involvement in criminal activity. *Id.* The fact

9 Mr. Boule was defrauding vulnerable individuals didn't sit well with Agent Egbert, who also

10 questioned whether Mr. Boule was reporting the income from that. *Id.*

11   On June 5, 2014, Agent Egbert called some government agencies to alert them to this

12 news article. (Egbert Decl., ¶ 49.) He doesn't recall which agencies he called other than the

13 Department of Licensing, but another was likely the IRS. *Id.* His purpose was to alert the

14 agencies of possible criminal conduct that might be of concern to them. *Id.* All he did was tell

15 the agencies they might be interested in the news article. *Id.*

16   He made these calls in the good-faith belief that Mr. Boule was breaking the law.

17 (Egbert Decl., ¶ 50.) Agent Egbert wasn't retaliating for Mr. Boule's tort claim, which hadn't

18 even been submitted at the time. *Id.* Nor was this the first time he reported Mr. Boule's

19 "SMUGLER" plate. *Id.* A couple years earlier, upon first learning that license plates

20 referencing criminal activity weren't allowed, Agent Egbert believes he reported the plate. *Id.*

21 It wasn't revoked at that time, but Agent Egbert thought the result might be different this time,

22 because the news article clarified how the plate was associated with illegal smuggling. *Id.*

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    Discovery has revealed that Mr. Boule's application for the "SMUGLER" plate was initially

2    denied as inappropriate, which shows Agent Egbert's concern was valid. (Boule Dep. 51:13–

3    52:25.)

4        Agent Egbert hasn't done anything to retaliate against Mr. Boule. (Egbert Decl., ¶ 51;

5    Andersen Dep. 63:18–25.) Nor is he or Agent Andersen aware of any Border Patrol agent

6    engaging in retaliation. *Id.*

7                                    **LEGAL AUTHORITY**

8        Summary judgment shall be granted if there is no genuine dispute as to any material

9    fact and the movant is entitled to judgment as a matter of law. FRCP 56(a). Once the movant

10   points out there's no evidence to support a claim, the nonmoving party must identify facts that

11   show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986).

12       **Mr. Boule's lawsuit isn't a recognized *Bivens* context.**

13       The Supreme Court first recognized an implied right of action for damages against

14   federal officers for constitutional torts in *Bivens v. Six Unknown Federal Narcotics Agents*,

15   403 U.S. 388, 389, 397 (1971). That case involved claims against FBI agents arising out of a

16   warrantless arrest and search. *See id.* Since *Bivens*, the Court has expanded its reach only twice.

17   *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017). First, the Court allowed a gender-

18   discrimination claim against a Congressman under the Fifth Amendment, *Davis v. Passman*,

19   442 U.S. 228, 230, 248–49 (1979), and second, the Court allowed a claim against prison

20   officials for failure to provide adequate medical care under the Eighth Amendment, *Carlson v.*

21   *Green*, 446 U.S. 14, 19 (1980).

22       The Supreme Court has "made clear that expanding the *Bivens* remedy is now a

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 10

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Following *Carlson*, the Court decided eight cases over three decades and refused to extend a *Bivens* remedy in any of them. *See Abbasi*, 137 S. Ct. at 1857 (collecting cases). Separation-of-powers principles are critical to determining whether to provide a new legal remedy, and Congress should usually make this decision. *Id.* Under this cautious approach, it's "possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856.

Whenever a damages claim is brought against a federal officer, the first question a court must ask is "whether the claim arises in a new *Bivens* context, *i.e.*, 'whether the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Abbasi*, 137 S. Ct. at 1864. A case might be meaningfully different due to the rank of the officers, the constitutional right at issue, the extent of judicial guidance available, the statutory mandate under which an officer was operating, the risk of disruptive intrusion into the functioning of other branches, or other factors. *Id.* at 1860.

Here, Mr. Boule's claims present a new *Bivens* context, because the Supreme Court hasn't previously recognized an action against Border Patrol agents conducting immigration checks, an action arising out the use of force to overcome a bystander's attempt to impede an investigation, or an action for alleged retaliation. Mr. Boule's claims are nothing like the *Bivens* actions the Supreme Court has previously approved. *See Bivens*, 403 U.S. at 389 (FBI agents' search, seizure, and handcuffing); *Davis*, 442 U.S. at 230 (Congressman's termination of female assistant); *Carlson*, 446 U.S. at 16 (prison officials' failure to treat inmate's asthma).

Mr. Boule's claims are asserted against a Border Patrol agent and involve an incident

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

that took place at an international border, where "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country" is well established. *United States v. Ramsey*, 431 U.S. 606, 616 (1977). Agent Egbert was operating under federal statutory authority. *See* 8 U.S.C. § 1357(a) (authorizing warrantless entry onto private land within 25 miles of border, search of vehicles for aliens near the border, and interrogation of aliens about their status). And the "Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004).

Mr. Boule will likely argue that his case is similar to *Bivens,* because it involves claims under the Fourth Amendment. But the courts have rejected approaching the *Bivens* analysis "on an amendment-by-amendment basis." *De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015).

Mr. Boule bases his retaliation claim on the First Amendment, but the Supreme Court has never recognized a *Bivens* remedy for a First Amendment claim. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *but see Iqbal*, 556 U.S. at 675 (assuming without deciding that *Bivens* remedy applies to free-exercise claim under First Amendment). Although the Ninth Circuit has recognized a First Amendment retaliation claim against FBI agents seeking to discourage political activities, *Gibson v. United States*, 781 F.2d 1334, 1341–42 (9th Cir. 1986), that case was decided before *Abassi* and Mr. Boule's claim is a new context as explained above.

In short, allowing Mr. Boule's claims to proceed would intrude on Congress's and the Executive's management of border security, which is plainly a new *Bivens* context. As the Supreme Court put it, "even a modest extension [of *Bivens*] is still an extension." *Abbasi*, 137

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    S. Ct. at 1864.

2            A *Bivens* remedy shouldn't be recognized in a new context "if there are special factors

3    counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (quotation

4    marks omitted). This inquiry focuses on whether the Judiciary is the appropriate branch to

5    determine whether a damages action should be afforded. *Id.* at 1857–58. If there's reason to

6    think Congress might doubt "the efficacy or necessity of a damages remedy" in a new context,

7    courts must refrain from recognizing one. *Id.* at 1858.

8            Here, special factors weigh against a *Bivens* extension. Mr. Boule's claims raise

9    significant separation-of-powers concerns by implicating the other branches' national-security

10   policies. "The Supreme Court has never implied a *Bivens* remedy in a case involving the

11   military, national security, or intelligence." *Hernandez v. Mesa*, 885 F.3d 811, 818–19 (5th

12   Cir. 2018) (quoting *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012)). "National-security

13   policy is the prerogative of the Congress and President." *Abbasi*, 137 S. Ct. at 1861.

14           As the Fifth Circuit recently noted, "the threat of *Bivens* liability could undermine the

15   Border Patrol's ability to perform duties essential to national security." *Hernandez*, 885 F.3d

16   at 819. The Border Patrol has been given the important national-security task of "interdicting

17   persons attempting to illegally enter or exit the United States," including potential terrorists. 6

18   U.S.C. § 211(e)(3)(A). But the risk of personal liability would interfere with these critical

19   functions by causing Border Patrol agents to hesitate and second guess their daily decisions

20   about whether and how to investigate suspicious activities near the border. *See Abbasi*, 137 S.

21   Ct. at 1861.

22           Congress is in a better position to evaluate the costs and benefits of creating a new legal

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 13

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

remedy, which would have far-reaching effects across an entire agency. *Id.* at 1857. Congress's

role is particularly relevant when it has granted Border Patrol broad authority while remaining

silent about a damages remedy for the exercise of that authority near the border. *See id.* at

1858, 1862. Indeed, this case highlights the disruptive consequences of extending a *Bivens*

action to Border Patrol. Mr. Boule's claim arising out of an immigration check of a single alien

has entailed the production by CBP and ICE of thousands of pages of confidential and heavily

redacted documents, the depositions of active and retired Border Patrol agents, and disclosure

of sensitive details about government operations, including ███████████████ .

Because these special factors strongly counsel hesitation, the Court should decline to

extend a *Bivens* remedy here. Therefore, the Court should grant summary judgment in favor of

Agent Egbert on Mr. Boule's constitutional claims.

**Mr. Boule's Fourth Amendment claims fail.**

Should the Court extend *Bivens* to Mr. Boule's Fourth Amendment claims, summary-

judgment dismissal is still appropriate, because Agent Egbert was authorized to contact Mr.

Kaya on private property and entitled to use reasonable force to overcome Mr. Boule's

obstruction of his investigation.

Agent Egbert was authorized by federal statute to enter onto Mr. Boule's property to

investigate Mr. Kaya's immigration status. Congress has given Border Patrol the responsibility

of "interdicting persons attempting to illegally enter or exit the United States" and preventing

"the illegal entry of terrorists, terrorist weapons, persons, and contraband." 6 U.S.C.

§ 211(e)(3). To enable Border Patrol agents to perform these duties, federal law empowers

them, without a warrant, to: (1) interrogate any alien about his right to be in the country; (2)

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

within a reasonable distance from the border, search vehicles for aliens; and (3) within 25 miles of the border, access private lands to patrol the border. 8 U.S.C. § 1357(a)(1), (3).

Therefore, Agent Egbert was authorized to access Mr. Boule's property, which abuts the international border, to contact Mr. Kaya. Although this authority doesn't extend to warrantless entry of a dwelling, it's undisputed that Agent Egbert accessed only the driveway leading to the front entrance of bed-and-breakfast held open to the public. The driveway wasn't enclosed, wasn't gated, and wasn't hidden from public view. The driveway was used by tenants, guests, border crossers, and members of the public seeking to do business with Smuggler's Inn. Border Patrol agents had previously accessed Mr. Boule's driveway on countless occasions without objection. In other words, the driveway didn't have any features of a private area that would merit treating it as part of the curtilage. *See United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012).

Agent Egbert never seized the SUV in which Mr. Kaya was riding. Agent Egbert didn't activate his lights or stop the SUV—he merely walked up to it after it had reached its destination and parked. Moreover, ████████████████████████████████████ ████████████████████████ so he was authorized by federal law to search the vehicle for Mr. Kaya and question him. 8 U.S.C. § 1357(a)(3). As a practical matter, the power to search a car and interrogate a passenger necessarily implies the power to stop the car.

Mr. Boule was never seized, either. A person is "seized" within the meaning of the Fourth Amendment when a reasonable person would not feel free to leave, *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009). Mr. Boule voluntarily inserted himself into an investigation: he admits he understood that Agent Egbert wanted to contact Mr. Kaya and

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   admits he stepped in front of the passenger door to prevent Agent Egbert from doing so. (Boule

2   Dep. 223:17–23.) More importantly, Mr. Boule admits he was free to walk away and that it

3   was clear Agent Egbert would have preferred he leave. (Boule Dep. 223:24–224:8; *see also*

4   Boule Dep. 146:7–9.) That's not a seizure under the Fourth Amendment.

5        Although Agent Egbert denies using any force whatsoever, he's entitled to summary

6   judgment even under Mr. Boule's version of events, because the minimal force alleged would

7   have been reasonable. The right to make an investigative stop necessarily carries with it the

8   right to use some degree of force or threat of force. *Graham v. Connor*, 490 U.S. 386, 396

9   (1989). Claims that officers used excessive force are analyzed under the Fourth Amendment

10  and its reasonableness standard. *Id.* at 395. Excessive-force claims can be dismissed on

11  summary judgment if, after resolving all factual disputes in favor of the plaintiff, a court

12  concludes that the force was objectively reasonable under the circumstances. *Scott v. Henrich*,

13  39 F.3d 912, 915 (9th Cir. 1994).

14       Determining whether the force was reasonable involves a careful balancing of the

15  nature and quality of the intrusion on the individual's Fourth Amendment interests against the

16  countervailing governmental interests at stake. *Graham*, 490 U.S. at 396. The test of

17  reasonableness is not capable of precise definition, but pertinent factors include the severity of

18  the crime at issue, whether the suspect poses an immediate threat to the safety of the officers

19  or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by

20  flight. *Id.* A *de minimis* use of force, however, isn't sufficient to support an excessive-force

21  claim. *See id.* "'Not every push or shove, even if it may later seem unnecessary in the peace of

22  a judge's chambers' violates the Fourth Amendment." *Id.* (citation omitted).

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 16

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    Here, Agent Egbert's alleged use of force was objectively reasonable.[2] While Agent

2    Egbert was initiating an immigration check, Mr. Boule willfully obstructed his investigation.

3    (Boule Dep. 131:6–14, 134:14–135:8, 223:21–224:8.) Agent Egbert calmly asked Mr. Boule

4    to move, but he refused. (Boule Dep. 134:14–135:8, 223:21–224:8.) Mr. Boule alleges that

5    Agent Egbert then grabbed him by the fabric of his sweatshirt in the chest area, picked him up

6    slightly, and threw him six inches backward into the side of the SUV. (Boule Dep. 135:9–25.)

7    Agent Egbert let go of Mr. Boule's sweatshirt and stepped back, but Mr. Boule still didn't

8    move. (Boule Dep. 136:1–17, 137:2–13.) He continued to block the passenger door and began

9    yelling angrily at Agent Egbert. (*Id.*) So Agent Egbert grabbed Mr. Boule's sweatshirt in the

10   chest area again and moved him aside. (Boule Dep. 137:14–138:22.) Although Mr. Boule

11   alleges he fell to the ground, he admits Agent Egbert might have just been trying to move him

12   aside. (Boule Dep. 138:15–22.) As Mr. Boule summarized in a sworn declaration submitted to

13   the Court, Agent Egbert "physically forced his way past me to my Yukon." (Dkt. 25 ¶ 5.)

14          Even under Mr. Boule's version of facts, this was a minimally intrusive use of force

15   that was necessitated by Mr. Boule's willful obstruction of an investigation and his refusal to

16   comply with verbal commands to step aside. The government has a strong interest in

17   preventing illegal movement of persons and contraband across our borders. *See United States*

18   *v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004) ("As the terrorist attacks of

19   September 11, 2001 reminded us starkly, this country's border-control policies are of crucial

20   importance to the national security and foreign policy of the United States . . . ."). And the

21   intrusion on Mr. Boule's Fourth Amendment interests was slight—he was merely forced to

22

23   ─────────────
     [2] While Agent Egbert denies using any force, this analysis is based on Mr. Boule's version of events.

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 17

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   move aside so Agent Egbert could conduct his investigation. Mr. Boule didn't even sustain

2   any injuries from the encounter. (Chong Decl., ¶¶ 5–10.) Therefore, summary judgment should

3   be granted in favor of Agent Egbert on Mr. Boule's Fourth Amendment claims.

4   **There's no evidence to support Mr. Boule's First Amendment retaliation claim.**

5   If the Court extends a *Bivens* remedy to Mr. Boule's First Amendment retaliation claim,

6   summary judgment is nevertheless required, because there's no evidence that Agent Egbert

7   retaliated against Mr. Boule for speaking out or petitioning the government for redress. To

8   state a claim for First Amendment retaliation against a government official, a plaintiff must

9   prove: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected

10  to adverse action by the defendant that would chill a person of ordinary firmness from

11  continuing to engage in the protected activity; and (3) there was a substantial causal

12  relationship between the constitutionally protected activity and the adverse action." *Blair v.*

13  *Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted). In other words, a

14  plaintiff must prove that retaliation was a but-for cause of the defendant's action. *See Skoog v.*

15  *Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). "[A]ction colored by some degree of

16  bad motive does not amount to a constitutional tort if that action would have been taken

17  anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

18  Mr. Boule alleges that he was subjected to retaliation after filing his complaint, which

19  he "belie[ves] was instigated by Defendant." (Dkt. 22 ¶ 16.) But "mere speculation that

20  defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th

21  Cir. 2014). Mr. Boule must come forward with evidence that Agent Egbert subjected him to

22  adverse action for purposes of retaliation, and he can't. The only action Agent Egbert took—

23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    calling government agencies to report possible criminal activity—couldn't have been

2    motivated by retaliation. Mr. Boule hadn't even filed his tort claim, much less his Complaint,

3    when Agent Egbert contacted the government agencies, so the calls weren't retaliatory. (Egbert

4    Decl., ¶¶ 50–51.) And Agent Egbert made these calls in his capacity as a private citizen, not a

5    federal employee, so the calls don't amount to government action anyway.

6         Furthermore, Mr. Boule's claim must be rejected, because it implicates Agent Egbert's

7    own First Amendment rights. Retaliation claims involving mere speech by a public official

8    "warrant a cautious approach." *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016), *cert.*

9    *denied*, 137 S. Ct. 2121 (2017). Restricting the ability of officials to engage in speech risks

10   interference with their ability to effectively perform their duties. *Id.* "It also ignores the

11   competing First Amendment rights of the officials themselves." *Id.* Therefore, it's generally

12   not actionable retaliation when public officials respond to citizen speech with speech of their

13   own. *See id.* Mr. Boule has no evidence that Agent Egbert did anything other than exercise his

14   own free speech by making telephonic reports to government agencies, so his First Amendment

15   retaliation claim should be dismissed.

16         **Mr. Boule's Fourteenth Amendment claims must be dismissed.**

17         "The Fourteenth Amendment applies to state action and not federal action." *Russo v.*

18   *Glasser*, 279 F. Supp. 2d 136, 142 (D. Conn. 2003) (dismissing Fourteenth Amendment claims

19   against federal prosecutors and agents); *see also* U.S. Const. amend. XIV ("No state

20   shall . . . ."). Nor does the Fourteenth Amendment apply to private conduct. *Rendell-Baker v.*

21   *Kohn*, 457 U.S. 830, 837 (1982) ("the Fourteenth Amendment . . . applies to acts of the states,

22   not to acts of private persons or entities"). Agent Egbert is a federal agent, and there are no

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 19

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    allegations in that he was ever acting under color of state law. (*See* Dkt. 22 ¶¶ 2, 8, 19–20.)

2    Since Agent Egbert wasn't a state actor, Mr. Boule's Fourteenth Amendment claims are

3    improper and must be dismissed.

4              **Agent Egbert is entitled to qualified immunity.**

5              Qualified immunity is an independent basis for dismissing Mr. Boule's constitutional

6    claims. Officers are entitled to qualified immunity when, in light of clearly established

7    principles governing the particular conduct, they reasonably could have believed their conduct

8    was lawful. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Thus, qualified immunity

9    protects reasonable mistakes, whether they involve mistakes of law, fact, or mixed questions

10   of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Indeed, qualified immunity

11   protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

12   *Briggs*, 475 U.S. 335, 341 (1986).

13             A court may exercise its discretion to dispose of a case on the basis of qualified

14   immunity without determining whether the alleged conduct was, in fact, constitutional.

15   *Pearson*, 555 U.S. at 236. In many cases, doing so can avoid wasting judicial resources and

16   the parties' resources when it's plain that a constitutional right was not "clearly established,"

17   but less obvious whether there should be such a right. *Id.* at 236–37.

18             Whether a right was clearly established must be determined "in light of the specific

19   context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201

20   (2001), *overruled in part by Pearson*, 555 U.S. at 236. Qualified immunity would be

21   meaningless if extremely abstract or general rights, such as "the right to be free from excessive

22   force," were all that had to be clearly established. *See Creighton*, 483 U.S. at 639. Instead, the

23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   law must have been clearly established in a more particularized sense. *Id.* at 640. The law must

2   be clear enough that a reasonable officer would understand that what he or she was doing

3   violated the law. *Id.*

4          In this case, Agent Egbert did not violate clearly established law. Mr. Boule can't cite

5   a single reported decision that put Agent Egbert on notice that he wasn't authorized to conduct

6   an immigration check in the open driveway of a place of public accommodation located on the

7   international border. Nor can Mr. Boule point to any reported decision that put Agent Egbert

8   on notice he couldn't shove Mr. Boule or throw him aside when Mr. Boule physically impeded

9   his investigation. Therefore, Agent Egbert is entitled to qualified immunity.

10         **Mr. Boule's negligence claim is improper.**

11         Mr. Boule's negligence claim fails for three independent reasons. First, federal agents

12  are immune from negligence claims. Second, Agent Egbert didn't owe a duty to Mr. Boule.

13  Third, a law-enforcement officer's intentional use of force during an arrest isn't a valid basis

14  for a negligence claim.

15         Under the Westfall Act, 28 U.S.C. § 2679 (2010), federal employees enjoy absolute

16  immunity from common-law tort claims arising out of the performance of their official duties.

17  *Osborn v. Haley*, 549 U.S. 225, 229 (2007). With the exception of claims brought under *Bivens*

18  or certain federal statutes, the exclusive remedy injury by a federal officer is to bring a claim

19  against the United States under the Federal Tort Claims Act. 28 U.S.C. § 2679(b)(1).

20         Even if Mr. Boule could bring a negligence claim against Agent Egbert personally, it

21  would fail under Washington law. A threshold issue in any negligence action is whether the

22  defendant owed a duty of care to the plaintiff. *Cummins v. Lewis Cty.*, 156 Wash. 2d 844, 852

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 21

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

(2006). This is a question of law to be decided by the court. *Id*. And in negligence actions against government actors, the public-duty doctrine applies. *See Osborn v. Mason Cty.*, 157 Wash. 2d 18, 27–28 (2006). It provides a framework for determining whether government actors owed any duty to a plaintiff suing in negligence. *Cummins,* 156 Wash. 2d at 853. Under this doctrine, a duty is actionable only if owed to the plaintiff specifically, rather than to the public at large. *Id.* at 852. As it's often summarized, "a duty to all is a duty to no one." *Id.* (quoting other cases). Mr. Boule hasn't identified any duty Agent Egbert owed to him personally. Nor do any of the recognized exceptions to the public-duty doctrine apply on these facts.[3] Accordingly, his negligence claim fails, because there was no duty owed.

Additionally, Mr. Boule has alleged only intentional acts, not negligent conduct. "As a general rule, law enforcement activities are not reachable in negligence." *Keates v. City of Vancouver*, 73 Wash. App. 257, 267 (1994) (affirming dismissal of claim for negligent infliction of emotional distress). This is probably because "negligence," by definition, doesn't include "conduct that is intentionally, wantonly, or willfully disregardful of others' rights." *Black's Law Dictionary* (10th ed. 2014). Numerous police cases have applied this principle. *See Brutsche v. City of Kent*, 164 Wash. 2d 664, 679 (2008) ("because the actions of the officers . . . were intentional, not accidental, we decline to address the negligence claim"); *Boyles v. City of Kennewick*, 62 Wash. App. 174, 178 (1991) (allegations of "improper and excessive" force during arrest didn't state a claim for negligence); *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) ("it is inapposite to allege the negligent commission of

---

[3] The four exceptions to the public-duty doctrine are: (1) legislative intent; (2) failure to enforce; (3) the rescue doctrine; and (4) a special relationship. *Babcock v. Mason Cty. Fire Dist. No. 6*, 144 Wash. 2d 774, 786 (2001).

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 22

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1  an intentional tort, such as the use of excessive force"). Since intentional acts by law-

2  enforcement officers aren't a valid basis for a negligence claim, Mr. Boule's negligence claim

3  must be dismissed.

4  **Mr. Boule's claim for attorney's fees should be dismissed.**

5  In the event the Court concludes there are any issues remaining for trial, it should still

6  dismiss Mr. Boule's claim for attorney's fees. Neither of the fee-shifting statutes cited in Mr.

7  Boule's Amended Complaint apply.

8  Mr. Boule can't recover attorney's fees under 42 U.S.C. § 1988, which authorizes an

9  award of fees to a plaintiff who prevails in an action to enforce various other civil-rights

10  statutes. He hasn't brought a cause of action under any of the enumerated statutes, so § 1988

11  doesn't apply. *See Lauritzen v. Lehman*, 736 F.2d 550, 553 (9th Cir. 1984) (agreeing with

12  government's position that fees may be awarded under § 1988 only for violation of "a provision

13  actually named therein"). There can be no liability for attorney's fees under § 1988 in a pure

14  *Bivens* action. *Hall v. United States*, 773 F.2d 703, 707 (6th Cir. 1985).

15  Nor may Mr. Boule recover attorneys' fees under 28 U.S.C. § 2412(b), because *Bivens*

16  actions aren't covered by that statute, either. *Kreines v. United States*, 33 F.3d 1105, 1109 (9th

17  Cir. 1994) (section 2412 "does not authorize the courts to award attorney's fees against the

18  United States in *Bivens* actions"). By its plain terms, § 2412 applies only to actions against

19  "the United States or any agency or any official of the United States acting in his or her official

20  capacity." 28 U.S.C. § 2412(b). But Mr. Boule has sued Agent Egbert in his personal capacity.

21  *See Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (a *Bivens* action is "maintained

22  against a defendant in his or her individual capacity only, and not in his or her official

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    capacity"). Therefore, Mr. Boule's claim for attorney's fees must be dismissed.

2    **Agent Egbert is entitled to summary judgment on his anti-SLAPP counterclaim.**

3    Under Washington law, anyone who communicates information to any government

4 agency, regarding any matter reasonably of concern to that agency, is immune from civil

5 liability for claims based upon the communication. RCW 4.24.510. This statute was enacted

6 to encourage reporting of potential wrongdoing to the government. *Gontmakher v. City of*

7 *Bellevue*, 120 Wash. App. 365, 366 (2004). A party prevailing on this defense is entitled to

8 expenses and reasonable attorney's fees and, unless the court finds the information was relayed

9 in bad faith, statutory damages of $10,000. RCW 4.24.510. In other words, the statute extends

10 immunity even to reports made in bad faith. *Akmal v. Cingular Wireless Inc.*, 300 Fed. Appx.

11 463, 465 (9th Cir. 2008) (unpublished).

12    Here, Agent Egbert is entitled to summary judgment and statutory damages on his

13 counterclaim, because he communicated information reasonably of concern to government

14 agencies in good faith. Agent Egbert intended to alert the Department of Licensing to a vanity

15 plate referencing criminal conduct, which is a reason for the DOL to cancel the plate under

16 WAC 308-96A-065(3)(a)(v). (Egbert Decl., ¶¶ 48–49.) Likewise, he questioned whether Mr.

17 Boule was paying taxes, which is fundamental to the IRS's mission. *Id.* Mr. Boule has no

18 evidence that this information was communicated in bad faith, so Agent Egbert is entitled to

19 recover costs, reasonable attorney's fees, and statutory damages.

20    ### CONCLUSION

21    Based on the foregoing, the Court should grant summary judgment in Agent Egbert's

22 favor on all issues. All of Mr. Boule's claims should be dismissed, and summary judgment

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 24

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    should be entered in favor of Agent Egbert on his counterclaim.

2        DATED: July 5, 2018

3                                    MILLS MEYERS SWARTLING P.S.
                                     Attorneys for Agent Erik Egbert
4
                             By:    *s/Geoffrey M. Grindeland*
5                                   Geoffrey M. Grindeland, WSBA No. 35798
                                    Nikki C. Carsley, WSBA No. 46650
6                                   Mills Meyers Swartling P.S.
                                    1000 2nd Avenue, 30th Floor
7                                   Seattle, WA  98104
                                    Telephone: (206) 382-1000
8                                   Fax: (206) 386-7343
                                    E-mail: ggrindeland@millsmeyers.com
9                                            ncarsley@millsmeyers.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 25

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing document with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to:

Breean Lawrence Beggs: bbeggs@pt-law.com, hhoffman@pt-law.com, lswift@pt-law.com

Gregory Donald Boos: gdboos@cascadia.com, gdboos@gmail.com

W. Scott Railton: srailton@cascadia.com

Kristin Berger Johnson: kristin.b.johnson@usdoj.gov, amy.hanson@usdoj.gov, CaseView.ECF@usdoj.gov, ECF-Civ.USAWAW@usdoj.gov, hana.yiu@usdoj.gov

I further certify that I mailed a true and correct copy of the foregoing to the following

non-CM/ECF participants by U.S. Mail:

N/A

DATED: July 5, 2018

*s/Karrie Fielder*
Karrie Fielder

AGENT EGBERT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00106-RSM) - 26

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343