IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT BOULE,

  Plaintiff,

  v.

ERIK EGBERT, *et al.*,

  Defendants.

Case No. C17-0106RSM

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING FOURTH AMENDMENT VIOLATION

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment On Plaintiff's Fourth Amendment Claim. Dkt. #94. Plaintiff argues that there is no genuine dispute as to any material fact regarding liability, and therefore judgment in his favor is appropriate with respect to his claim. *Id.* Defendant Egbert asserts that summary judgment in his favor is appropriate because Plaintiff impermissibly attempts to extend his *Bivens*[1] claims to a new context, he was invited onto the subject property, he was given permission to conduct the search at issue, and he is protected by qualified immunity in any event. Dkts. #102[2] and #131 (filed

---

[1] Referring to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[2] Although not styled as a cross-motion for summary judgment, Defendant Egbert has moved for summary judgment on all claims. The Court resolves the Fourth Amendment portion of Defendant Egbert's motion in this Order, and the remainder of his motion (Dkt. #102) will be resolved by separate Order.

ORDER– 1

under seal).³ For the reasons set forth below, the Court disagrees with Plaintiff and DENIES his motion.

## II. BACKGROUND

Plaintiff initially filed this action on January 5, 2017. Dkt. #1. He filed an Amended Complaint on September 6, 2017. Dkt. #22. The allegations arise from an interaction with Defendant Erik Egbert, a United States Customs and Border Protection ("CBP") Officer, on March 20, 2014. *Id.*

Plaintiff resides in a house immediately adjacent to the U.S./Canada border. Dkt. #99 at ¶ 4 (filed under seal)⁴. The house and its driveway are accessed by a one-lane private dirt road that connects to a paved public street. *Id.* at ¶ 5. Plaintiff and Defendant appear to agree that this property is in area known for cross-border smuggling of people, drugs, illicit money and items of significance to criminal organizations. *Id.* at ¶ 7 and Dkt. #108 at ¶ 10. In addition to living in the home, Plaintiff operates a bed and breakfast, which is known as the Smuggler's Inn. Dkts. #99 at ¶ 4 and #108 at ¶ 6.

Plaintiff has posted a sign at the intersection of the private dirt lane that leads to his home and the paved public street that reads:

> Welcome to Smuggler's Inn
> Guests Only
> Private Property
> No Trespassing

---

³ A number of documents in this matter have been filed under seal, with redacted versions available publicly. To the extent possible, the Court will reference only information available in the public documents. For any citations to the sealed documents, the same information is located at the same reference in the public version of the document.

⁴ While the Declaration of Robert Boule cited here was filed under seal, the information set forth in this factual background was contained on the public docket in Plaintiff's motion for summary judgment (Dkt. #99).

ORDER– 2

Dkt. #99 at ¶ 16 and Ex. 5 thereto. There is conflicting evidence in the record as to when that sign was posted. Defendant Egbert asserts that the sign was not posted as of March 20, 2014. Dkts. #130 at ¶ 23 and #133 at ¶ 23 (filed under seal). A friend of Plaintiff's states that the sign has been posted for the last six or seven years. Dkt. #148 at ¶ 11.

On March 20, 2014, Defendant Egbert drove down the dirt lane into Plaintiff's driveway. Dkts. #108 at ¶ 29 and #130 at ¶ 24. A photo of Plaintiff's property depicts the drive way immediately adjacent to Plaintiff's home, surrounded on to sides by a tall wooden fence. Dkts. #98, Ex. 4 and #108, Ex. A. Earlier that day, Defendant Egbert had learned through conversation with Plaintiff of a guest arriving from Turkey who had booked a room at Smuggler's Inn for that evening. Dkt. #130 at ¶ 30. Plaintiff informed Agent Egbert that the guest had arrived in New York via air from Turkey the night before, and had then flown to SEA-TAC airport that day. Dkts. #94 at 4-5 and #99 at ¶ 10. Two persons employed by Plaintiff had driven to SEA-TAC airport in one of Plaintiff's vehicles to pick up the guest and transport him to Smugglers Inn. Dkt. #99 at ¶ 10. As the vehicle returned, driving down the lane and coming to a stop in the Plaintiff's driveway, Defendant Egbert followed in his Border Patrol vehicle, entering Plaintiff's driveway and parking immediately behind the vehicle. Dkts. #108 at ¶ 29 and #130 at ¶ 24.

The driver exited while the guest remained seated in the vehicle. According to Defendant Egbert, when he approached the vehicle, the driver gave him permission to talk to the guest, Mr. Kaya. Dkts. #108 at ¶ 32 and #130 at ¶ 24. However, Plaintiff, who was on a nearby porch, told Defendant Egbert he was trespassing and asked him to leave his property. Dkts. #99 at ¶ 10 and #108 at ¶¶ 33-34. Defendant Egbert was "puzzled" by the behavior. Dkt. #108 at ¶ 35.

ORDER– 3

What happened next is not largely in dispute. The parties agree that Agent Egbert did not leave when asked to do so by Plaintiff. Dkt. #108 at ¶¶ 33-34. The parties also agree that Plaintiff moved between Defendant and the vehicle in which the passenger was seated. *Id.* Defendant Egbert states that he informed Plaintiff he (Egbert) wanted to speak with the guest about his immigration status. *Id.* at ¶ 34. The parties dispute what level of force, if any, was used for Agent Egbert to access the vehicle, but the parties agree that Agent Egbert opened the vehicle door and asked the guest about his status in the country. *Id.* at ¶¶ 37-38. The parties agree that Defendant Egbert confirmed that the guest was legally in the country and then allowed Plaintiff to escort the guest into his home. *Id.* at ¶¶ 40-41. The instant action followed.

### III. DISCUSSION

**A. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of

ORDER– 4

her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Plaintiff's Fourth Amendment Claim**

Plaintiff asks this Court to find as a matter of law that Agent Egbert violated Plaintiff's Fourth Amendment Rights when he (Egbert) drove onto Plaintiff's curtilage and refused to leave when asked to do so by Plaintiff. Dkt. #94 at 8-10. Defendant Egbert responds that summary judgment in his favor is appropriate because: 1) allowing his claim to proceed would be an unwarranted extension of *Bivens* into a new context; 2) he was authorized by federal law to enter onto Plaintiff's property, and the driveway in front of Smuggler's Inn is not an area where Plaintiff had a reasonable expectation of privacy for purposes of the Fourth Amendment; 3) Plaintiff does not have standing to assert a claim relating to the alleged detention or search of another person; and 4) he is entitled to qualified immunity. Dkt. #128. For the reasons discussed below, the Court agrees that allowing Plaintiff's claim to proceed would be an unwarranted extension of *Bivens* into a new context.

*1. Curtilage*

As an initial matter, the Court examines whether the driveway outside Plaintiff's home/inn is protected curtilage. The Fourth Amendment's protection of curtilage has long been black letter law. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida* v. *Jardines*, 569 U. S. 1, 6, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).

ORDER– 5

"At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Ibid.* (quoting *Silverman* v. *United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961)). To give full practical effect to that right, the U.S. Supreme Court considers curtilage – "the area 'immediately surrounding and associated with the home'" – to be "'part of the home itself for Fourth Amendment purposes.'" *Jardines*, 569 U. S. at 6 (quoting *Oliver* v. *United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California* v. *Ciraolo*, 476 U.S. 207, 212-213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986). When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. *Jardines*, 569 U. S. at 11. Such conduct thus is presumptively unreasonable absent a warrant.

Defining the extent of the "curtilage," depends on four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301. The Supreme Court has noted that, "for most homes, the boundaries of the curtilage will be clearly marked: and the conception defining the curtilage – as the area around the home to which the activity of home life extends – is a familiar one easily understood from our daily experience." *Oliver v. U.S.*, 466 U.S. 170, 182 n.12, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).

ORDER– 6

In this case, the Court agrees with Plaintiff that the driveway in front of his house/inn is curtilage. According to photographs in the record, the driveway runs in a u-shape, off of 99th St. SW, in front of the house/inn and alongside part of the front lawn past the front perimeter of the house. Dkt. #98, Exs. 3 and 4. The top portion of the driveway that sits behind the front perimeter of the house is enclosed on two sides by a white, wooden fence that appears to be the height of a car. *Id.*, Ex. 4. A visitor endeavoring to reach the front door of the house/inn would have to enter the driveway and park, before proceeding up a set of steps leading to the front porch. *Id.* When Defendant Egbert followed the vehicle and encountered the person sitting inside, it was parked in the driveway near the front steps to the house/inn.

The "'conception defining the curtilage' is . . . familiar enough that it is 'easily understood from our daily experience.'" *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182, fn. 12). Just like the front porch, side garden, or area "outside the front window," *Jardines*, 569 U.S. at 6, the driveway enclosure where Defendant Egbert stopped the vehicle and confronted the guest inside constitutes "an area adjacent to the home and 'to which the activity of home life extends,'" and so is properly considered curtilage. *Id.* at 7 (quoting *Oliver*, 466 U.S. at 182, fn. 12). In physically intruding on the curtilage of Plaintiff's home/inn to stop and search the vehicle, Defendant Egbert not only invaded Plaintiff's Fourth Amendment interest in the item searched, *i.e.,* the vehicle, but also invaded Plaintiff's Fourth Amendment interest in the curtilage of his home/inn. Thus, the question now before this Court is whether there is an exception that justifies the invasion of the curtilage.

ORDER– 7

*2. Bivens*

Defendant Egbert first argues that this lawsuit is not recognized in the *Bivens* context, and therefore should be dismissed. Dkt. #102 at 10-14 (*filed under seal*). Specifically, Defendant argues that Plaintiff's claims present a new *Bivens* context because the Supreme Court has not previously recognized an action against Border Patrol agents conducting immigration checks, an action arising out of the use of force to overcome a bystander's attempt to impede an investigation, or an action for alleged retaliation, and therefore the claims are nothing like the *Bivens* actions the Supreme Court has previously approved. *Id.*

In 1971 the United States Supreme Court decided *Bivens*. In that case, the Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. *Bivens*, 403 U.S. at 397. The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." *Id.* at 396. However, the Court noted that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. *Id.* at 396-97. The Court held that it could authorize a remedy under general principles of federal jurisdiction. *See id.* at 392 (citing *Bell* v. *Hood*, 327 U.S. 678, 684, 66 S. Ct. 773, 90 L. Ed. 939 (1946)).

Since then, the U.S. Supreme Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity, in recognition that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp.* v. *Malesko*, 534 U. S. 61, 68, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). The

ORDER– 8

Court has recently set forth the proper test for determining whether a case presents a new *Bivens* context. *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1859-60, 198 L. Ed.2d 290 (2017).

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* In determining whether a *Bivens* remedy should be recognized in that case, the Court in *Abbassi* compared the respondents' claims to already recognized *Bivens* claims and noted that a new context arises in cases where "even a modest extension" exists. *Id.* at 1864.

In the instant matter, the alleged conduct has the recognizable substance of Fourth Amendment violations. Nevertheless, Defendant Egbert is a U.S. Border Patrol Agent, rather than a traditional law enforcement officer, federal workplace supervisor, or prison official, and was purporting to operate under a different "statutory or other legal mandate" than the officials outlined in the "traditional" *Bivens* claims referenced in *Abbasi*. For these reasons, the Court assumes that this case presents a "modest extension" in a "new context" for the application of a *Bivens* remedy and must determine whether there are special factors counseling against extension of *Bivens* into this area. *Ziglar*, 137 S.Ct. at 1857. The Supreme Court's precedents "now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by

ORDER– 9

Congress.'" *Id.* Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. This requires the Court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. *Id.* at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

Even assuming that Plaintiff had no other remedy than a *Bivens* claim for the alleged Fourth Amendment violation, this Court cannot extend *Bivens* if a "special factor" counsels hesitation. *See Wilkie v. Robbins*, 551 U.S. 537, 554, 562, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007). Thus, the Court must carefully weigh all the reasons Defendant Egbert has offered for denying a *Bivens* cause of action. Here, for the reasons set forth by Defendant, the Court agrees that Plaintiff's claims raise significant separation-of-powers concerns by implicating the other branches' national-security policies. *See* Dkt. #143 at 4-5. "The Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence." *Hernandez*, 885 F.3d at 818–19. This Court agrees that the risk of personal liability would cause Border Patrol agents to hesitate and second guess their daily decisions about whether and how to investigate suspicious activities near the border, paralyzing their important border-security mission. *See Abbasi*, 137 S. Ct. at 1861. Likewise, the Court agrees that Congress is in the best position to evaluate the costs and benefits of a new legal remedy, particularly when it has already granted Border Patrol broad authority to secure the international border without providing a damages remedy for claims

ORDER– 10

arising in that context. *See Abbasi*, 137 S. Ct. at 1857–58 and 1862. For all of these reasons, the Court finds that Plaintiff attempts an impermissible *Bivens* claim in a new context, and special factors preclude such a claim. The Court therefore declines to address Defendant's alternative arguments regarding Defendant's authorization under federal law, standing or qualified immunity.

## IV.  CONCLUSION

Having reviewed Plaintiff's and Defendant's motions for summary judgment, the oppositions thereto and replies in support thereof, along with the supporting Declarations and Exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Summary Judgment on Plaintiff's Fourth Amendment Claim (Dkt. #94) is DENIED.

2. Defendant Egbert's Motion for Summary Judgment on Plaintiff's Fourth Amendment Claim is GRANTED and the claim will be dismissed against Defendant Egbert in its entirety.

3. The remainder of Defendant Egbert's motion for summary judgment (Dkt. #102) remains noted on the Court's calendar and will be resolved by separate Order.

DATED this 21 day of August, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE